UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRANELL NASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 1:14-cv-499-RLY-DML |
| | ) |
| WAYNE A. JONES, R.N., | ) |
| | ) |
| Defendant. | ) |

**Entry Discussing Defendant's Motion for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 25] is **granted.**

## I.  Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is Tranell Nash ("Mr. Nash"), an inmate who at all relevant times was confined at the Pendleton Correctional Facility ("Pendleton"). The defendant is Wayne A. Jones, R.N. ("Nurse Jones").  In his second amended complaint, Mr. Nash alleges that Nurse Jones was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. He seeks compensatory and punitive damages.

The defendant seeks resolution of the plaintiff's claim through summary judgment. The plaintiff has responded to the defendant's motion for summary judgment and the defendant has replied.

## II. Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. Nash, the non-movant, the following facts are undisputed for purposes of the motion for summary judgment:

On January 10, 2014, Mr. Nash injured his left hand and wrist playing basketball at the prison recreation center when he fell awkwardly. Mr. Nash was sent from recreation to the medical

department at approximately 8:00 p.m. He saw Nurse Jones. Mr. Nash complained of left wrist pain caused by his fall on the basketball court.

Nurse Jones' examination revealed that Mr. Nash's left wrist was swollen and painful with manipulation. There was no visible deformity of the wrist and no visible displacement of the bone. Nurse Jones assessed the injury, then prescribed ice compresses and pain medication. He also told Mr. Nash to keep the hand and wrist elevated. After manipulation of the affected wrist, Nurse Jones immobilized Mr. Nash's left wrist with a splint and ace bandage and instructed him to return to the clinic if his symptoms did not improve in the next few days.

Mr. Nash requested to be seen by a doctor and have an x-ray taken of his left wrist. The parties dispute what Nurse Jones said in response. Mr. Nash states in his sworn statement that Nurse Jones told him that a doctor and x-ray technicians were not available and he would not recommend that Mr. Nash be transported to a hospital for treatment. Nurse Jones states in his affidavit that he would never tell an inmate that a doctor was not available. A physician is either present on site or on call at all times at Pendleton.

As a registered nurse, Nurse Jones has training and experience in evaluating sprains, strains and fractures. His duties at Pendleton include treating and evaluating those types of injuries. In the event a physician or outside care was indicated to treat Mr. Nash's injury, Nurse Jones would have recommended that a physician be called or the inmate be transported to a hospital. He was qualified to assess and treat Mr. Nash's wrist injury. Nurse Jones states in his sworn affidavit that based on his training, education and experience, he believed that there was no indication on January 10, 2014, that the wrist injury required transport to an outside hospital or immediate evaluation by a physician.

Nurse Jones did not rule out a possible fracture of the wrist, however, the initial indicated treatment was to stabilize the wrist with a splint and elastic bandage, immobilization, ice compresses, and pain relievers. A splint inhibits motion of the wrist, thus minimizing pain and discomfort along with preventing aggravation of the injury, while compensating for swelling. In the early stages of the type of injury suffered by Mr. Nash, which resulted in significant swelling, it is Nurse Jones' opinion that the immediate application of a cast would most likely not be indicated. There is no x-ray technician on site at Pendleton. If a patient continued to show symptoms and report pain after the initial standard treatment, the next step would generally be to order an x-ray of the affected area. Nurse Jones had no further involvement with Mr. Nash's medical care after the evening of January 10, 2014. Nurse Jones states that he never knowingly disregarded Mr. Nash's medical needs and he based his treatment on his medical judgment.

Mr. Nash submitted a request for health care form on January 11, 2014, complaining of pain. He was seen in the clinic again on the morning of January 13, 2014, and an x-ray was ordered. Mr. Nash's wrist and arm were placed in a fiberglass cast. He was given one Vicodin. On January 14, 2014, Mr. Nash was seen by Dr. Michael Person. The x-ray findings showed Mr. Nash had a mildly displaced distal radius fracture. As the x-ray result appeared to show the fracture involved the wrist joint, Dr. Person recommended that Mr. Nash be seen by an orthopedist. Vicodin was prescribed.

On January 30, 2014, Mr. Nash was seen for a follow up visit with Dr. Person. Mr. Nash reported that he was no longer in any pain. His cast was not causing discomfort. On February 6, 2014, Mr. Nash had an outside consultation with an orthopedist, Dr. Renn Crichlow. Dr. Crichlow concurred that Mr. Nash had a minimally displaced distal radius fracture. Mr. Nash saw Dr. Crichlow for follow up on February 25, 2014. No surgery or treatment, other than maintaining the

cast for three more weeks and taking Vitamin D, was recommended. The cast was removed on March 18, 2014, without problems.

**B. Analysis**

At all times relevant to Mr. Nash's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Mr. Nash alleges that Nurse Jones was deliberately indifferent to his serious medical needs on January 10, 2014.

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994).; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

For purposes of summary judgment, the parties do not dispute that Mr. Nash had a serious medical need. Rather, they disagree as to whether Nurse Jones was deliberately indifferent to Mr. Nash's wrist injury. Mr. Nash does not take issue with the treatment that Nurse Jones did provide, but he alleges that Nurse Jones was deliberately indifferent to his injury and pain by denying and delaying him seeing a physician. Mr. Nash contends that Nurse Jones knew that Mr. Nash needed

to be seen immediately by a physician but he failed to make that happen. He points to the Report of Offender Injury form, dkt. 33, pg. 3, in support of that position. In the "follow up or recommendations:" section on the form, Nurse Jones appears to have written "to be seen by MD ASAP for eval."  Nurse Jones states in his affidavit that there was no indication on January 10, 2014, that Mr. Nash's wrist injury required an *immediate* evaluation by a physician.

"In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013) (internal quotation omitted). Mr. Nash has presented no evidence showing that Nurse Jones' treatment or alleged failure to call a physician caused him harm. Nurse Jones had no control over what happened to Mr. Nash after the evening of January 10, 2014. Moreover, there is no evidence as to what different treatment he would have been provided if a physician had been called that evening. In support of his claim, Mr. Nash submitted an Offender Grievance Response Report. Dkt. 33, pg. 81. He had filed a grievance complaining that he was not given appropriate medical attention by the nurse on January 10, 2014. In responding to the grievance, the prison physician was asked about the handling of the injury and the steps that were taken. The physician stated that appropriate care was given and had he been contacted, he would not have ordered anything different. *Id.* Mr. Nash's own evidence fails to show that the outcome would have been different if a physician had been consulted that evening.

"Prolonged and unnecessary pain resulting from a significant delay in effective medical treatment may support a claim of deliberate indifference." *Petties v. Carter*, No. 14-2674, 2015 4567899, *3 (7th Cir. July 30, 2015). The inmate must show that the treatment provided "strayed

so far from accepted professional standards that a jury could infer the [provider] acted with deliberate indifference." *Id.* (doctor was not deliberately indifferent even though he failed to immobilize ankle for eight weeks after inmate suffered torn Achilles tendon when he immediately provided crutches, a week of lay-in, and Vicodin pain medication). Under the circumstances presented in this case, although Mr. Nash did suffer pain from the wrist injury, he has not shown that Nurse Jones intentionally or with reckless disregard delayed effective treatment and that his treatment was beyond accepted professional standards.

"A prisoner may establish deliberate indifference by demonstrating that the treatment he received was blatantly inappropriate." *Pyles,* 771 F.3d at 409 (internal quotation omitted). "Making that showing is not easy: A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Id.* (internal quotation omitted). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Id.* The record shows that immobilizing the wrist, prescribing ice compresses and pain medication, and telling Mr. Nash to return to the clinic if he did not see improvement, were adequate and appropriate initial steps in treating his wrist injury that evening.

Mr. Nash obviously disagrees with Nurse Jones' opinion that a call to a physician was not necessary on the evening of January 10, 2014, however, disagreement with a provider's medical judgment is not enough to prove deliberate indifference. *Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir. 2010). Even if Mr. Nash had shown negligence on the part of Nurse Jones, which he has not, that would not be sufficient to demonstrate a violation of the Eighth Amendment. *Pyles,* 771

F.3d at 409 (7th Cir. 2014) ("Something more than negligence or even malpractice is required.").

Mr. Nash has not met the high standard of deliberate indifference in this case.

## IV.  Conclusion

Defendant Nurse Jones is entitled to summary judgment on Mr. Nash's claim of deliberate indifference to a serious medical need. Accordingly, the defendant's motion for summary judgment [dkt. 25] is **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:   08/27/2015

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Tranell Nash
No. 147576
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronically Registered Counsel